## Green River Chemical Co., et al. v. Iler, et al.

(Decided October 20 1910.)

### Appeal from Ohio Circuit Court.

Real Estate—Sale for Taxes—Consideration—Claim for Improvements Rejected.—A large three story building and appurtenances which cost $20,000 or $25,000, built and used for manufacturing wood alcohol, acetate of lime, charcoal, creosote, &c., and sold to B. for $8,500 of which $620 was paid in cash and notes executed for the balance, and a deed made and held in escrow to be delivered when the purchase money was paid. B. took possession and operated it awhile and sold one half interest to I. who paid about $1,100. It was assessed by B. for taxes as per-

sonal property. B. failed to pay the taxes, and it was levied on and sold therefor and bid in by I. for $43.10. Appellants tendered to I. $50.70 which included the cost of the sale with interest and penalties which was refused. This action was brought by appellants to compel I. to accept the $50.70 and release the property. I. filed an answer and counterclaim for fraud of appellants in concealing the sale of the property to B., claiming that he made a contract with B. to pay him $1,127.50 most of which he used in improving the plant. Upon a trial the court set the tax sale aside and allowed I. $595 on his counterclaim. Held that though the requirements of the statute as to the sale of real estate had not been complied with, its sale as personal property did not change it from realty to personalty, and appellants should not lose their property by reason thereof. That the lower court erred in allowing I. $595 or any sum as a lien on the plant to the prejudice of appellants. The judgment of the lower court is affirmed on the cross appeal and reversed on the original appeal.

BARNES & ANDERSON for appellants.

GLENN & SIMMERMAN and HEAVRIN & WOODWARD for appellees.

OPINION OF THE COURT BY JUDGE NUNN.

The parties appellant herein are and were prior to 1902, residents of Boonville, Indiana. During the year named they organized a partnership, secured six acres of land near the town of Rockport, Ky., graded it and made excavations for the construction of buildings to do a manufacturing business. They constructed a plant on this ground for the purpose of manufacturing wood alcohol, acetate of lime, charcoal, creosote, &c. The installation of the plant cost twenty or twenty-five thousand dollars. It consisted of a three room office building, a still-dry house forty by fifty feet, three stories high, one acetate store room twenty by forty feet, one dry house twenty by thirty feet, one charcoal room twenty-four by seventy feet, one room for raw lime, a pump house with a well beneath it twenty-four feet deep within which two pumps were located, one large boiler room in which was located a boiler incased in masonry, retorts, twelve in number, holding a cord of wood each, were also incased in masonry, and connected with these retorts were eight large copper stills, twelve copper condensers, ten wooden tanks, two large iron stills, and all other apparatus necessary to conduct a plant for the purposes named. They continued

this plant in operation until May, 1907, under the name of "Green River Chemical Co." Upon the last-named date, they sold the plant to Geo. H. Bohannon for the price of $8,500 and executed to him a deed of conveyance which recited that the sum of $620 was cash in hand paid, and that the unpaid purchase money was evidenced by two promissory notes executed by Bohannon to the firm, one for $1,000 due in ninety days, and the other for $6,880 due in fifteen months from date. The deed, by agreement of parties, was deposited in the Boonville National Bank to be delivered to Bohannon when he paid the purchase price. At the time the deed was executed, there was a separate written agreement entered into between the parties, which, after reciting the sale and execution of the conveyance and the placing of the deed in escrow, continues as follows:

"It is also understood and agreed by and between the parties hereto, that the party of the second part, may at his option, pay the full amount of the purchase price at any time he sees fit, before the maturity of said note, and at which time the deed today made and acknowledged, shall be delivered to him by the Boonville National Bank.

"It is also understood and agreed, by and between the parties hereto, that in anticipation of the agreement hereby made, and in consideration of the money paid by the second party to the parties of the first part, the possession of the real estate of the parties of the first part located at Rockport, Ky., and the appurtenances thereunto belonging, is this day transferred to the party of the second part, and he is to have and assume full control and charge of said plant, as his own, but the title thereto, it is understood and agreed shall not pass from the parties of the first part to the second part until the deed this day made and acknowledged is delivered to him, as above specified and set out.

"And it is agreed and understood by and between the parties hereto, that the operation of the plant at Rockport, Kentucky, is to be carried on and performed by the party of the second part on his own responsibility from the time he takes possession of the same, and at any time the party of the second part fails to keep his part of the contract and pay the sums of money above specified, the parties of the first part shall have the right to annul the contract and regain possession of the property.

"It is also agreed and understood by and between the

partics hereto, that in consideration of the premises, the party of the second part agrees in the near future to put a new dry floor in the plant at Rockport, Kentucky, and that he will put a new roof on the boiler room of said plant, and that he will at all times keep said property in as good repair as when the same came into his possession.''

Bohannon took possession of the property and operated it as his own until the month of August, 1907, when, without the knowledge of appellants, he made a trade with appellee W. P. Iler by which Iler became the owner of one-half of the plant, raw material and the finished product. They invoiced the raw material and the finished product and Iler paid Bohannon one-half of the amount of the invoice, something over $1,100, and he agreed with Bohannon to assume one-half of the obligation to appellants. This all occurred without appellants having any knowledge thereof. It was kept secret from them at the request of Iler. A short time after this trade between Iler and Bohannon, at Iler's instance, a new contract was drafted to be executed by appellants by which they were to grant some concessions and give a longer time in which the purchase money should be paid. The new contract was sent to appellants, but they refused to sign it. Soon after this Iler declined to continue in the business. This fact was not known to appellants until this litigation arose. While Bohannon was the owner of the property, by some means it was listed with the assessor as personal property. Bohannon, who had previously resided in Indiana, stated, without contradiction, that he knew nothing about assessing property in Kentucky; that he showed the assessor the property and left it to him to list it as the law required. Bohannon failed to pay the taxes, and the sheriff levied upon the property and advertised it for sale. Appellants received a telephone message a few days before the sale, and immediately mailed the sheriff of the county a check for $43.10, the amount of the taxes, but it appears that the check did not arrive until the morning after the sale. Appellee W. P. Iler bought the property at the sale for the amount of the taxes, and it appears that all the property except the lot and two or three of the houses were sold to pay same. Immediately after the sale appellants tendered to Iler and the sheriff, $50.70 which included the cost of the sale, the interest and penalties fixed by the statutes. They refused to accept it and release the

property. This action was then brought by appellants to compel Iler to accept the money and release the property. Iler answered claiming the property as his own by reason of his purchase at the sheriff's sale, and refused to accept the tax with the penalties added. The case continued upon the docket and the parties proceeded to prepare it upon these issues, and appellee then filed an amended answer and counterclaim to the effect that on account of the fraud of appellants in concealing the sale of the property to Bohannon he was induced to and did enter into an agreement with Bohannon whereby he was to and did put $1,127.50 into the concern, most of which was used in improving the plant. This was denied by appellants and upon a trial the lower court set the tax sale aside and gave Iler, on his counterclaim, $595, which the court recited was "for money furnished to it through its agent, Geo. H. Bohannon, being the amount of money defendant Iler paid to Bohannon which went into the improvement of defendant's property." Appellants appeal from that part of the judgment allowing Iler the $595 and appellee from the part setting aside the tax sale.

It is agreed by all the parties that the requirements of the statutes with reference to the sale of real estate for taxes, were not complied with. And appellants contend that as the property was realty, or partook of realty, the sale by the sheriff was invalid; but appellee claims appellants are estopped from claiming that it was realty because it was listed as personal property, and they are bound by the sale of it as such. We will not spend much time upon this question. Some of the property sold was in fact real estate and the other was attached to and partook of the realty, and Iler knew this fact. Appellants did not list the property. It was listed by Bohannon when he or he and appellee owned it and their or the assessors mistake in listing it as personal property, did not change it from realty to personal property, and appellants should not be deprived of their rights by reason thereof. Therefore, the court did not err in setting the sale aside and compelling appellee to accept the tax paid by him with the penalties added.

The question to be determined on the appeal of appellants is also easy of solution. Appellee Iler knew all about the trade between appellants and Bohannon. The separate writing referred to was in Bohannon's possession and was read time and time again by Iler before he

entered into the trade with Bohannon and paid him the $1,127. He knew when he traded with Bohannon that the property did not belong to appellants; that they had only a lien upon it for the unpaid purchase money and that they retained the legal title to better secure them. He knew it was Bohannon's duty under the contract to list the property for taxation, to pay the taxes and keep the property in repair, to put a new dry floor in the plant and a new roof on the boiler room. This was all to be done by Bohannon at his own expense, and was required of him to better secure the unpaid purchase money. Iler admits that he had read and understood this writing before his trade with Bohannon. He gave his deposition in the case, and it is impossible to find anything in it showing in the slightest particular how appellants defrauded him in any manner. He stands in no better position than does Bohannon. Suppose Bohannon had made the few improvements that were made with his own money and was seeking to place a lien upon this property for same. The court, of course, would not grant him any relief, as there is no law authorizing such a claim, and as stated, Iler occupied no better position than Bohannon does. The amount of money Iler put in was without the request or even knowledge of appellants, it was under an agreement with Bohannon.

For these reasons, the lower court erred in allowing Iler $595 or any sum as a lien upon this plant to the prejudice of appellants.

Therefore, the judgment of the lower court is affirmed on the cross-appeal and reversed on the original appeal and remanded for further proceedings consistent herewith.